Reed Zars (WY State Bar No. 6-3224)
Attorney at Law
910 E. Kearney Street
Laramie, Wyoming   82070
Telephone: (307) 760-6268
Email: reed@zarslaw.com
*Member, U.S. District Court, Western District of Texas Bar*

Gabriel Clark-Leach (TX State Bar No. 24069516)
Environmental Integrity Project
1206 San Antonio Street
Austin, Texas 78701
Telephone: (512) 637-9479
Email: gclarkleach@environmentalintegrity.org
*Application for admission granted; swearing in scheduled December 2019*

George E. Hays (WA State Bar No. 53874)
P.O. Box 843
Bellevue, Washington 98009
Telephone: (415) 566-5414
Email: georgehays@mindspring.com
*Application pending for admission*

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

MIDLAND/ODESSA DIVISION

| Sierra Club, Plaintiff,<br><br>    v.<br><br>James Lake Midstream, LLC and Canyon Midstream Partners, LLC, Defendants. | Civil Action No.<br><br>  7:19-cv-00280<br><br>Notice of Lodging |
|---|---|

Plaintiff Sierra Club hereby provides notice to the Court of the lodging of the attached Consent Decree. The relief set forth in this Consent Decree represents a full resolution of this Clean Air Act citizen suit.

This Consent Decree should not to be entered as an Order of the Court until the completion of a forty-five (45) day review period provided to the United States Department of Justice and the Environmental Protection Agency by the Clean Air Act, 42 U.S.C. § 7604 (c)(3), and described in paragraphs 40-42 of the Consent Decree. Following the conclusion of the forty-five day notice period, the Parties intend to review and take into account any comments submitted by the federal government, and thereafter move the Court to review and enter this Consent Decree.

Plaintiff will provide notice to the Court regarding the date the United States receives notice of this Decree, and the date by which any comments from the United States must be submitted.

Dated this 3rd of December, 2019

Respectfully submitted,

*Reed Zars*

Reed Zars (WY State Bar No. 6-3224)
Attorney at Law
910 E. Kearney Street
Laramie, WY   82070
Telephone: (307) 760-6268
reed@zarslaw.com

Gabriel Clark-Leach (TX State Bar No. 24069516)
Environmental Integrity Project

2

1206 San Antonio Street
Austin, Texas 78701
Telephone: (512) 637-9479
Email: gclarkleach@environmentalintegrity.org

George E. Hays (WA State Bar No. 53874)
P.O. Box 843
Bellevue, WA 98009
Telephone: (415) 566-5414
Email: georgehays@mindspring.com
*Application pending for admission*

*Counsel for Sierra Club*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No:  7:19-cv-00280 |
| | ) | |
| JAMES LAKE MIDSTREAM, LLC and | ) | |
| CANYON MIDSTREAM PARTNERS, | ) | |
| LLC, | ) | CONSENT DECREE |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Date lodged in Court:   <u>December 3, 2019</u>

Date entered by Court: <u>              </u>

## CONSENT DECREE AND ORDER

WHEREAS, Sierra Club ("Plaintiff") brought this action (the "Complaint") against James Lake Midstream, LLC and Canyon Midstream Partners, LLC ("Defendants") (collectively, the "Parties") under the federal Clean Air Act (the "Act"), 42 U.S.C. § 7401, et seq., for declaratory and injunctive relief and assessment of civil penalties for certain alleged violations of the Act, and its implementing regulations at the James Lake Gas Plant (the "Plant");

WHEREAS, James Lake Midstream, LLC ("JLM") is the current owner and operator of the Plant and was the owner and operator at the time of the actions alleged by the Plaintiff to have violated the Act;

WHEREAS, Canyon Midstream Partners, LLC ("Canyon") held the membership interests in JLM at the time of the actions alleged by the Plaintiffs to have violated the Act but has since sold its interests in JLM, and thus has no ability to control the future operation of the Plant or implementation of injunctive measures in this Consent Decree and Order (the "Consent Decree");

WHEREAS, this Consent Decree therefore sets out separate requirements for JLM and Canyon;

WHEREAS, Defendants deny Plaintiff's allegations and maintain that they have been and remain in compliance with the Act and are not liable for civil penalties or injunctive relief, and nothing herein shall constitute an admission of liability;

WHEREAS, the Parties desire to settle all matters by this Consent Decree and avoid the costs, delay, and uncertainty of litigation;

2

WHEREAS, the Parties agree that the settlement of this action through this Consent Decree without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, the Parties further anticipate that actions taken by the Defendants, consistent with this Consent Decree, will result in significant reductions of emissions from the Plant;

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) of the Clean Air Act ("Act"), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period; and

WHEREAS, the Parties consent to the entry of this Consent Decree without trial of any issues.

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

## I.   JURISDICTION, VENUE, AND APPLICABILITY

1.      This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304 of the Act, 42 U.S.C. § 7604 and under 28 U.S.C. §§ 1331.

2.      Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. §§ 1391.

3.      The Parties consent to entry of this Consent Decree without further notice.

4.      Upon the Date of Entry, the provisions of this Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties.    Further, the specific provisions of this Consent Decree applicable to JLM, Plaintiff and Canyon, respectively,

3

shall apply to and be binding upon the successors in interest or assigns of JLM and Plaintiff and the successors in interest of Canyon, respectively; provided that Woodland Midstream II, LLC will not, nor will any of its affiliates other than JLM, be or become a party to this Consent Decree as a result of being a successor in interest of Canyon.   The liability of Canyon and JLM shall be several and not joint.

5.      In the event JLM proposes to sell or transfer, in whole or in part, its legal or equitable interest in the Plant before the termination of this Consent Decree, or if JLM's operational responsibilities for the Plant are transferred or assigned in whole or in part before the termination of this Consent Decree (a "Transfer"), JLM shall notify Plaintiff of such proposed sale, transfer or assignment, shall advise the proposed purchaser, successor-in-interest, assignee or transferee of the existence of this Consent Decree, and shall obtain the purchaser's, successor-in-interest's, assignee's or transferee's agreement to comply with the terms hereof that apply to JLM.

6.      In the event of a Transfer by JLM, JLM shall file a motion to modify this Consent Decree with the Court to make the terms and conditions of this Consent Decree applicable to the purchaser, successor-in-interest, assignee, or transferee.

## II.   DEFINITIONS

7.      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or regulations implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act or those regulations.

4

8.     Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

(a)     "AGI" shall mean acid gas injection.

(b)     "AGI Well" shall mean the acid gas injection well at the Plant.

(c)     "Ajax Compressor" shall mean the engine-driven acid gas compressor designated as Emissions Point Number ("EPN") C-9 on the Plant's Standard Permit Registration Number 116553.

(d)     "Clean Air Act," "CAA," or "Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations.

(e)     "Date of Entry" shall mean the date this Consent Decree is approved or signed by the United States District Court Judge.

(f)     "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Western District of Texas.

(g)     "Day" shall mean, unless otherwise specified, calendar day.

(h)     "Electric AGI Compressor" shall mean the electric-drive acid gas compressor at the Plant.

(i)     "Emergency Flare" shall mean the flare designated as EPN FL-1 on the Plant's Standard Permit Registration Number 116553.

(j)     "Emissions Event" shall have the meaning set forth in 30 Tex. Admin. Code § 101.1(28) at the Date of Entry.

5

(k)     "EPA" shall mean the United States Environmental Protection Agency.

(l)     "Excess Emissions," for the purposes of this Consent Decree only, shall mean the quantity of sulfur dioxide ("$SO_2$") in tons emitted to the atmosphere from any emission point at the Plant in connection with an Emissions Event. For the limited purpose of calculating the stipulated penalties, Excess Emissions shall include emissions of $SO_2$ even if those emissions may be eligible for an affirmative defense.   However, JLM is not barred from asserting an affirmative defense in connection with these emissions for any other purpose.

(m)     "Inlet Scrubber Vessel" shall mean the vessel designated as V-9600 on the Plant operating records, which is used to separate entrained liquids from a gas stream to be compressed by the Ajax Compressor and the Electric AGI Compressor prior to the first stage of compression on each respective compressor.

(n)     "Liquid Diaphragm Pump" shall mean a Sandpiper brand pump, or equivalent, constructed of 316 stainless steel or polytetrafluorethylene wetted parts.

(o)     "Parties" shall have the meaning set forth in the recitals.

(p)     "TCEQ" shall mean the Texas Commission on Environmental Quality.

(q)     "Term" of the Consent Decree shall mean the period of time between the Date of Lodging and the date the Consent Decree is terminated in accordance with Section XIV (Termination).

(r)     "Treated Gas Stream" shall mean gas that is contacted with an amine solution whereby most, if not all, of the hydrogen sulfide ("$H_2S$") and carbon dioxide ("$CO_2$") are removed.

### III.    COMPLIANCE AND REPORTING REQUIREMENTS

9.    Within 90 days of entry, subject to Force Majeure Events, JLM will complete the following projects that are anticipated to reduce $SO_2$ emissions from the Plant:

(a)     Condensable Liquids Management Project.   JLM shall complete the following measures intended to improve condensable liquids management in the acid gas injection system:

(i)     Installation of a second Liquid Diaphragm Pump and level control switch on the off-skid scrubber vessel which services the Ajax Compressor;

(ii)     Installation of a Liquid Diaphragm Pump and level control switch on the Electric AGI Compressor to provide back-up service to the existing electric pump;

(iii)     Installation of a Liquid Diaphragm Pump and level control switch on the Inlet Scrubber Vessel;

(iv)     Replacement of the Inlet Scrubber Vessel's existing blowcase with a NACE-compliant trim blowcase vessel; and

(v)     To ensure redundant pump service, the purchase of a spare Liquid Diaphragm Pump that can replace an installed Liquid Diaphragm Pump in the event an installed Liquid Diaphragm Pump is taken out of service.

(b)     <u>Automation and Instrumentation Project</u>.    JLM shall complete the following measures intended to improve the automation of the Plant's injection compressors and improve monitoring of the compressors in the control room:

(i)     Installation of an electronic temperature indication monitor on the Ajax Compressor cooler that will allow for live monitoring in the control room to assist operators in maintaining louver settings that keep the acid gas temperature acceptable for each stage of compression, but above its dew point and hydrate temperature;

(ii)     Integrate monitoring of the Ajax Compressor into the control room screens to allow for real-time operator visibility of key operating parameters and set point alarms to enhance troubleshooting;

(iii)     Incorporate data from the Ajax Compressor and the Electric AGI Compressor into the plant historian module to allow for enhanced analysis, troubleshooting and trend observation;

(iv)     Installation of high-pressure and high-high-pressure alarms for the AGI Well to provide for notification to the plant control room

8

should the AGI Well down-hole pressure exceed the thresholds established in paragraph 10(b) of the Consent Decree.

(c)     Improved Measurement and Monitoring of the Acid Gas Flow. JLM shall complete the following measures intended to improve the accuracy of reported emissions:

(i)     Installation of a gas chromatograph for the plant inlet stream to provide for continuous measurement of the composition of the inlet gas stream, including $H_2S$ and $CO_2$;

(ii)     Installation of a second transmitter on the $H_2S$ analyzer on the Treated Gas Stream to provide a more accurate measure of the level of $H_2S$ in the gas stream sent to Emergency Flare during an upset;

(iii)     Installation of a fuel purge meter at the Ajax Compressor and Electric AGI Compressor to allow for measurement of the gas utilized to purge these compressors prior to repairs.

10.     Within 90 days of the Date of Entry, subject to Force Majeure Events, and continuing through the term of the Consent Decree, JLM shall implement the following projects that are anticipated to reduce $SO_2$ emissions from the Plant:

(a)     Improved Compressor Maintenance Program.   JLM shall implement an enhanced maintenance program that, compared to past practices, will improve the quality and frequency of maintenance on its injection compressors.   Specifically, JLM will establish and implement a maintenance schedule for the Ajax Compressor and Electric AGI Compressor that specifies the

9

inspection, evaluation, repair and replacement activities required for each maintenance period (*e.g.*, 90 days, 180 days, and annually).   Each planned maintenance event shall be conducted in accordance with a detailed checklist of actions that are consistent with the applicable Original Equipment Manufacturer ("OEM") specifications and contain additional tasks that management has identified as requiring periodic attention.

(b)   <u>AGI Well Conditioning</u>. Upon completion of the project identified in Paragraph 9.b.i of the Consent Decree (installation of high-pressure and high-high-pressure alarms for the AGI Well), JLM shall monitor surface pressure of the AGI Well on an ongoing basis and shall condition the AGI Well within 30 days of monitoring pressure values above 1400 pounds per square inch gauge ("psig").

(c)   <u>Spare Parts/Equipment Inventory</u>.   JLM shall maintain at the Plant an inventory of all compressor parts and components subject to failure to avoid the delay in obtaining such parts and components from independent providers in the event of compressor breakdown.   Specifically, JLM shall establish and maintain an inventory of spare parts for the Ajax Compressor and the Electric AGI Compressor that is in accordance with OEM recommendations and the planned maintenance schedule implemented pursuant to paragraph 10(a) of the Consent Decree.

11.   JLM shall submit to Plaintiff a report describing the progress in implementing the projects described in paragraphs 9 and 10 on a quarterly basis for the

twelve months following the Date of Entry and semi-annually thereafter until termination.

12.     Beginning on April 1, 2021, and annually thereafter until termination, JLM shall submit to Plaintiff a written report on its compliance with paragraph 18.

13.     If the information provided to Plaintiff pursuant to paragraphs 11 and 12 is determined by JLM to be confidential business information or required to be kept confidential by law, JLM may require that the provision of this information be subject to customary confidential treatment pursuant to a nondisclosure agreement with Plaintiff.

14.     Notwithstanding any other provision of this Consent Decree, JLM shall notify Plaintiff of any application to increase permitted $SO_2$ emissions at the Plant during the Term of the Consent Decree in excess of the Plant's permitted $SO_2$ emissions as of the Date of Lodging.   Such notification shall be made at least 30 days prior to submittal of the application.   Notwithstanding any other provision of the Consent Decree, Plaintiff retains the right to challenge any application to increase permitted $SO_2$ emissions from the Plant during the Term of the Consent Decree.

15.     Plaintiff shall not initiate or participate in any judicial or administrative proceeding, or submit written comments, challenging any permit changes necessary for JLM to effectuate the commitments in paragraphs 9 and 10.

### IV.     CIVIL PENALTY

16.     Not later than 60 days after this Court's approval of the Consent Decree, Canyon shall pay a civil penalty to the U.S. Department of Treasury in the amount of $100,000 in settlement of the alleged violations that are the subject of this action.

11

## V.   MITIGATION

17.     As part of a mitigation project, not later than 180 days after the Date of Entry, Canyon shall deposit in the Court's registry the sum of $275,000 (the "Mitigation Payment(s)") as a part of the settlement reached to conclude this litigation.   The Mitigation Payments shall be used to fund a project chosen by the parties from the list of pre-approved environmental projects maintained by the Texas Commission on Environmental Quality or another project, as chosen by the parties.   The funds will be expensed upon joint motion of the parties.   If the parties fail to make to file such motion within two years of entry of this Decree, the Mitigation Payments shall be made forwarded from the Court's registry to the U.S. Department of Treasury as a civil penalty.

## VI.   STIPULATED PAYMENTS

18.     JLM shall be liable for stipulated payments for Excess Emissions each year, as follows:

(a)     Beginning on January 1, 2020 and continuing on an annual basis thereafter until the termination of the Consent Decree, without demand JLM will pay a stipulated penalty to the United States Treasury of $1,000 for each ton of Excess Emissions emitted above 100 tons in a calendar year.   Stipulated penalties shall be due on or before May 1 of the year following any such Excess Emissions (with the first of any such annual payments of stipulated penalties being due and owing no earlier than May 1, 2021).

12

(b)     JLM shall be entitled to subtract, from any annual stipulated penalty payment it has incurred, the portion of any TCEQ penalty that was actually paid to TCEQ or any payment for a Supplemental Environmental Project ("SEP") made in lieu of penalties to the TCEQ that was actually paid to a SEP, in each case, since JLM's last stipulated penalty payment, if any, or the Date of Entry if no previous stipulated penalty payment was due and owing, and that was attributable to the same violation(s) of the same emission limit(s) for which JLM has already paid, or are currently required to pay, a stipulated payment pursuant to this Consent Decree.

(c)     Maximum stipulated payments owed pursuant to paragraph 18(a) shall be capped at $500,000 for any given calendar year.

### VII.   NOTIFICATIONS AND RECORDKEEPING

19.     All notifications, submittals, reports, and other information required by this Consent Decree shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing by U.S. Mail and email.

For the Plaintiff:

George E. Hays
P.O. Box 843
Bellevue, WA 98009
Email: georgehays@mindspring.com

For Defendants:

Joshua Frank

13

Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 639-7748
joshua.frank@bakerbotts.com

## VIII.   FORCE MAJEURE

20.     A "Force Majeure Event" for the purposes of the Consent Decree is defined as any event arising from causes beyond the reasonable control of Defendants or any entity controlled by Defendants (including, without limitation, Defendants' contractors and subcontractors, and any entity in active participation or concert with Defendants with respect to the obligations to be undertaken by Defendants pursuant to this Consent Decree), that delays or prevents, or can reasonably be anticipated to delay or prevent, compliance with the obligations of the Consent Decree, despite Defendants' best efforts to meet such deadlines.   The requirement that Defendants exercise "best efforts" to meet the deadlines includes using best efforts to avoid any Force Majeure Event before it occurs, and to use best efforts to mitigate the effects of any Force Majeure Event as it is occurring, and after it has occurred, such that any delay is minimized to the greatest extent possible.

21.     Without limitation, unanticipated or increased costs or changed financial circumstances shall not constitute a Force Majeure Event.   The absence of a regulatory approval shall constitute a Force Majeure Event so long as Defendants demonstrate that, as appropriate to the approval:

(a)     Defendants made timely and complete applications for such approval(s) to meet the deadlines;

14

(b)     Defendants reasonably complied with all requirements to obtain such approval(s);

(c)     Defendants diligently sought such approval,

(d)     Defendants diligently and timely responded to all requests for additional information; and

(e)     Without such approval, Defendants will be required to act in violation of law to meet one or more of the obligations set forth in this Consent Decree.

## IX.     EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

22.     This Consent Decree represents full and final settlement among the Parties.   This Consent Decree resolves, and Plaintiff and Plaintiff's affiliates release and waive, any and all civil claims, causes of action, demands, actions and/or rights of action, that Plaintiff or Plaintiff's affiliates may have against Defendants or Defendants' affiliates for violations of the Clean Air Act at the Plant occurring on and before the Date of Entry of this Consent Decree by the Court.   The Parties further agree that the Consent Decree resolves, and Plaintiff and Plaintiff's affiliates release and waive, any and all civil penalties and injunctive relief related to alleged violations of the Clean Air Act regulatory provisions alleged in the Complaint that may occur from the date the Complaint was filed through the date of termination of the Consent Decree. Notwithstanding termination of this Consent Decree pursuant to Section XIV, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

23.     Plaintiff and Plaintiff's affiliates shall not: (a) fund any third-party litigation involving any claims settled, released and waived by this Consent Decree; or (b) submit formal comments or testimony to an administrative agency opposing permits or approvals necessary for Defendants or Defendants' affiliates to comply with the Consent Decree.   Notwithstanding termination of this Consent Decree pursuant to Section XIV, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

24.     Notwithstanding the foregoing, Plaintiff reserves all legal and equitable remedies available to enforce the terms of this Consent Decree.   Further, nothing in this Consent Decree shall restrict or control Plaintiff's comments, litigation, or any other activity related to state or federal implementation plans other than those expressly identified in paragraphs 22 and 23 of this Consent Decree.

25.     Nothing in this Consent Decree shall be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions.   Defendants reserve all legal and equitable remedies available against any such action by the United States.

26.     The failure of any Party to comply with any requirement contained in this Consent Decree will not excuse the obligation to comply with other requirements contained herein.

## X.      DISPUTE RESOLUTION

27.     The dispute resolution procedure provided by this Section may be used to resolve all disputes arising under this Consent Decree, provided that the Party invoking such procedure has first made a good faith attempt to resolve the matter with the other Party.   The provisions of this Section X shall be the sole and exclusive mechanism to seek relief from the Court to resolve disputes arising under or with respect to this Consent Decree.

28.     The dispute resolution procedure required herein may be invoked by one Party giving written notice to the other Party advising of a dispute pursuant to this Section.   The notice shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute.

29.     In the event one Party asserts that any other Party is in violation of any requirement of this Consent Decree, the asserting Party will provide written notice of such asserted violation to the other Party.   Before pursuing action to enforce any asserted violation, the noticing Party will provide the other Party with an opportunity to remedy such asserted violation within 30 days of receiving written notice or, in the case of a claimed breach which cannot be reasonably remedied within a thirty (30) day period, an opportunity to take reasonable action to remedy the claimed violation within such thirty (30) day period and, thereafter, diligently complete the activities necessary to remedy the claimed breach.

30.     If the asserted violation is not cured within the applicable time period, the asserting Party may seek relief from the Court.

17

31.     The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.    This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

32.     No party shall be entitled to money damages for any breach of this Consent Decree.    Specific performance shall be the sole remedy available for any breach of this Consent Decree.

## XI.    ATTORNEYS FEES AND COSTS

33.     Pursuant to 42 U.S.C. § 7604(d), not later than 30 days after the Court's entry of this Consent Decree, Canyon shall pay $235,309.13 for costs of litigation (including reasonable attorney and expert witness fees) to Plaintiff's counsel by bank draft made payable to "George E. Hays."

34.     Nothing in this Consent Decree shall constitute an admission by any Party as to liability for costs or fees from any other Party.

## XII.    MODIFICATION

35.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by Plaintiff and the Defendants. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIII.    RETENTION OF JURISDICTION

36.     Until termination of this Consent Decree, this Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties to this

Consent Decree to enforce the terms and conditions of this Consent Decree.   Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

## XIV.   TERMINATION

37.     After a period of no less than three years from the Date of Entry, JLM may move the Court to terminate the Consent Decree provided that JLM certifies that it has been in Substantial Compliance with the requirements of the Consent Decree for the twenty-four (24) months immediately preceding the motion to terminate. "Substantial Compliance" shall mean that JLM has satisfied all injunctive requirements set forth in paragraphs 9 and 10, that Excess Emissions did not exceed 150 tons per calendar year in the two calendar years immediately preceding the motion to terminate, and that JLM has paid any stipulated payments due pursuant to paragraph 18.

38.     Notwithstanding the provisions of paragraph 37, Defendants may move to terminate the Consent Decree without a showing of Substantial Compliance after five calendar years from the Date of Entry provided Defendants demonstrates either: (1) that the Plant has two operational acid gas injection compressors, each one of which alone is capable of handling the facility's full acid gas waste stream; or (2) that the Plant has three operational acid gas injection compressors, any two of which together are capable of handling the facility's full acid gas waste stream.

39.     Termination of this Consent Decree shall not affect any matter expressly set forth in this Consent Decree that is to survive as an agreement among the Parties.

19

## XV.    LODGING AND ENTRY OF DECREE

40.     The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

41.     Pursuant to 42 U.S.C. § 7604(c)(3), this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of 45 days.    After the review period has elapsed, the Consent Decree may be entered by the Court.    If the Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

42.     The Parties agree to cooperate in good faith in order to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval.    In the event that DOJ or EPA comments upon the terms of this Consent Decree, the Parties agree to discuss such comments to support the entry of the Consent Decree or to make any revisions to the Consent Decree as the Parties determine may be appropriate.

## XVI.   SIGNATORIES

43.     Each undersigned representative of a Party to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this Consent Decree.

44.     The Parties hereby agree not to oppose entry of this Consent Decree by this Court or challenge any provision of this Consent Decree.

## XVII.  COUNTERPARTS

45.    This Consent Decree may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Consent Decree and submit it to this

Court for approval and entry.

SO ORDERED:

_____

UNITED STATES DISTRICT JUDGE

Dated this ___ day of _____, 2019.

FOR PLAINTIFF SIERRA CLUB:

Joshua Smith

Date: 11/22/2019

FOR DEFENDANT JAMES LAKE MIDSTREAM, LLC:

_____          Date: ___11-22-19___
Richard Wright

FOR DEFENDANT CANYON MIDSTREAM PARTNERS, LLC:

_____          Date: _____
Michael Walsh

FOR DEFENDANT JAMES LAKE MIDSTREAM, LLC:

_____          Date: _____
Richard Wright

FOR DEFENDANT CANYON MIDSTREAM PARTNERS, LLC:

_____          Date: 11.22.19
Michael Walsh